UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| JOSHUA JAMICHAEL VANBUREN | CIVIL ACTION NO. 19-1153 |
| | SECTION P |
| VS. | |
| | JUDGE TERRY A. DOUGHTY |
| DOUG WALKER, ET AL. | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Plaintiff Joshua Jamichael VanBuren, proceeding pro se and in forma pauperis, filed the instant proceeding on August 30, 2019, under 42 U.S.C. § 1983. He names the following defendants: Assistant District Attorney Doug Walker, Assistant District Attorney Daniel Hunter, Officer Jody Ledoux, District Attorney Nick Anderson, and Officer Paul Blunschi.[1] For reasons that follow, the Court should dismiss Plaintiff's claims.

## Background

Plaintiff claims that, on May 19, 2014, Officer Jody Ledoux arrested him without probable cause. [doc. # 1, p. 7].

Plaintiff claims that, on July 18, 2014, District Attorney Nick Anderson filed a bill of information against him without probable cause. *Id.*

Plaintiff claims that, on March 16, 2016, Assistant District Attorney Doug Walker placed him on "pre-trial diversion . . . without probable cause . . . ." *Id.* at 4. On March 31, 2017, the Ouachita Parish District Attorney's Office dismissed the charges for which he was placed on pre-trial diversion. *Id.* at 9.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff claims that, on January 26, 2017, Officer Paul Blunschi falsely arrested him for attempted second-degree murder. *Id.* at 12-13.

Plaintiff claims that, on March 15, 2017, Assistant District Attorney Daniel Hunter filed a duplicitous bill of information against him "without probable [cause]." *Id.* at 4, 14.

Plaintiff asks the Court to dismiss the criminal charges that Hunter filed against him, to vacate and expunge his conviction, and to terminate his pre-trial diversion agreement. *Id.* at 4. Plaintiff also seeks $1,000,000.00 in compensation, $1,000,000.00 in punitive damages, and $1,000,000.00 in "normal" damages. *Id.*

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A claim is

facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

**2. Duplicative Claims**

The Court should dismiss four of Plaintiff's claims because they are duplicative, frivolous, and malicious. "IFP complaints may be dismissed as frivolous pursuant to § 1915(d) when they seek to relitigate claims which allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the IFP plaintiff." *Wilson v. Lynaugh*, 878 F.2d 846, 850 (5th Cir. 1989). Likewise, a case is duplicative if it involves "the same series of events" and allegations of "many of the same facts as an earlier suit." *Bailey v. Johnson*, 846 F.2d 1019, 1021 (5th Cir. 1988). Moreover, "it is malicious for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff." *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) (internal quotation marks omitted); see *Lewis v. Sec'y of Pub. Safety & Corr.*, 508 F. App'x 341, 344 (5th Cir. 2013); *Bailey*, 846 F.2d at 1021 ("[A]n IFP complaint that merely repeats pending or previously litigated claims may be considered abusive and dismissed under . . . section 1915(d)."). District courts are "'vested with especially broad discretion' in determining whether such a dismissal is warranted." *Bailey*, 846 F.2d at 1021.

Here, the following claims are substantially similar to, and arise from the same series of events as, allegations in proceedings that Plaintiff filed before: (1) Plaintiff's claim that, on May

4

19, 2014, Officer Jody Ledoux arrested him without probable cause; (2) Plaintiff's claim that, on July 18, 2014, District Attorney Nick Anderson filed a bill of information against him without probable cause; (3) Plaintiff's claim that, on January 26, 2017, Officer Paul Blunschi falsely arrested him for attempted second-degree murder; and (4) Plaintiff's claim that, on March 15, 2017, Assistant District Attorney Daniel Hunter filed a duplicitous bill of information against him "without probable [cause]."

With respect to (1) above, Plaintiff claimed, in *Joshua J. VanBuren v. Police Dept. City of Monroe, et al.*, 3:17-cv-1684 (W.D. La. 2017), that Officer Jody Ledoux falsely arrested him on May 19, 2014. With respect to (2) above, Plaintiff claimed, in *Joshua J. VanBuren v. District Attorney Office Ouachita Parish, et al.*, 3:17-cv-1680 (W.D. La. 2017), that Nick Anderson maliciously charged him with several crimes on July 18, 2014.

As to (3), Plaintiff claimed, in *Joshua Jamichael VanBuren v. Raymond M. Spoon, et al.*, 3:19-cv-0453 (W.D. La. 2019), that Officer Paul Blunschi falsely arrested him on January 26, 2017. Turning to (4), Plaintiff claimed, in *VanBuren*, 3:17-cv-1680, that Daniel Hunter maliciously charged him with two crimes on March 15, 2017.

As these claims are duplicative, frivolous, and malicious, the Court should dismiss them. With the exception of Plaintiff's claim against Officer Blunschi, which the Court should dismiss without prejudice to Plaintiff's right to prosecute his pending appeal, the Court should dismiss these claims with prejudice. See *Adele v. Rogers*, 669 F. App'x 264 (5th Cir. 2016).

**3. Prosecutorial Immunity**

Plaintiff claims that, on March 16, 2016, Assistant District Attorney Doug Walker placed him on "pre-trial diversion . . . without probable cause . . . ." [doc. # 1, pp. 4, 9]. On March 31, 2017, the Ouachita Parish District Attorney's Office dismissed the charges for which he was

5

placed on pre-trial diversion. *Id.* at 9.

"Criminal prosecutors . . . enjoy absolute immunity from claims for damages asserted under [42 U.S.C.] § 1983 for actions taken in the presentation of the state's case." *Watson v. Walton*, 68 F.3d 465 (5th Cir. 1995). "[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." *Kalina v. Fletcher*, 522 U.S. 118, 126 (1997).

"Absolute immunity is not a rigid, formal doctrine, but attaches to the functions a prosecutor performs." *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018). The Fifth Circuit has consistently held that the decision of when and whether to file criminal charges clearly falls within the scope of a district attorney's prosecutorial duties protected by absolute prosecutorial immunity. See *Quinn v. Roach*, 326 F. App'x 280, 292 (5th Cir. 2009); *Workman v. Calogero*, 174 Fed. App'x. 824, 826 (5th Cir. 2006). Absolute immunity shields prosecutors even when they act maliciously, wantonly, or negligently. *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016).

Here, Walker is entitled to absolute prosecutorial immunity.[2] In *Davis v. Grusemeyer*, 996 F.2d 617, 629 (3d Cir. 1993) *overruled on other grounds by Rolo v. City Investing Co. Liquidating Trust,* 155 F.3d 644 (3d Cir. 1998), for instance, the court found that "the decision whether to divert an indictee from trial into [pre-trial intervention ("PTI")]" is protected by absolute prosecutorial immunity because it is "a critical component of a prosecutor's function

---

[2] Walker is not, however, immune from Plaintiff's request for injunctive relief. See *Supreme Court of Virginia v. Consumers Union of U. S., Inc.*, 446 U.S. 719, 100 (1980) ("Though prosecutors enjoy absolute immunity from damages liability, they may be sued for injunctive relief, since they are state officers who threaten to enforce and who do enforce the law."). Below, the undersigned will analyze Plaintiff's request for injunctive relief.

requiring an exercise of judgment similar to the decision whether to negotiate a guilty plea." "[J]ust as the integrity of the judicial process depends on a prosecutor's ability to exercise his judgment in deciding whom to indict, . . . and whether to dismiss charges pursuant to a negotiated guilty plea, . . . so a prosecutor's discretion to divert an indictee from trial into PTI is an integral part of a properly functioning judicial process."

In Louisiana, "the decision whether to admit a defendant into a pre-trial diversion program is solely within the discretion of the district attorney as part of his authority not to institute prosecution." *State v. Franklin*, 2013-1489 (La. App. 4 Cir. 6/11/14), 147 So. 3d 231, 245, writ denied, 2014-1326 (La. 2/13/15), 159 So. 3d 460. In that respect, a claim concerning a "discretionary decision not to prosecute [is] barred by absolute prosecutorial immunity . . . ." *Hoffart v. Herman*, 328 F. App'x 972, 973 (5th Cir. 2009).

Here, in other words, offering pre-trial diversion to Plaintiff essentially constituted a decision of when and whether to prosecute which, as above, is a function protected by absolute prosecutorial immunity. See *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir. 1994) ("Pre-trial diversion is an alternative to prosecution that diverts certain offenders from traditional criminal justice processing into a program of supervision.").

Under Plaintiff's allegations, Walker acted only in the course of his role as an advocate for the State. Accordingly, the Court should dismiss this claim as frivolous and because Plaintiff seeks monetary relief from a defendant immune from such relief.

**4. Injunctive Relief**

Plaintiff asks the Court to terminate his pre-trial diversion agreement.[3] [doc. # 1, p. 4].

---

[3] Because Plaintiff is no longer in custody and does not, consequently, seek release from custody, the undersigned does not construe this claim/request as a petition for habeas corpus. See *Preiser v. Rodriguez*, 93 S. Ct. 1827, 1841-42 (1973) (holding that when an inmate challenges the very

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged by executive order, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.[4]

In Plaintiff's pre-trial diversion agreement, he agreed to meet legal or specified family responsibilities, to refrain from drinking alcoholic beverages, to refrain from visiting places where alcohol is the principal commodity, to submit to psychological examination, treatment, or therapy, to pay expenses of treatment, to notify the District Attorney of any changes in Plaintiff's educational or employment status, to submit to random drug and substance-abuse testing, and, *inter alia,* to "devote himself to a school or education curriculum or gainful employment . . . ." [doc. #s 1, pp. 9-10; 1-2, p. 13].

Plaintiff completed the pre-trial diversion program/agreement.[5] Plaintiff suggests that, on March 31, 2017, the Ouachita Parish District Attorney's Office dismissed the charges, for which

---

fact or duration of his confinement and the relief he seeks is immediate or speedier release, "his sole federal remedy is a writ of habeas corpus.").

[4] *Heck* applies even when a plaintiff is no longer incarcerated and is thus no longer able to file a habeas petition. *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000); see *Queen v. Purser*, 109 F. App'x 659, 660 (5th Cir. 2004) (citing *Randell* and disagreeing with the plaintiff's argument that the "'favorable termination' requirement of *Heck* does not apply because he had completed his sentence before he filed his complaint and thus could not challenge his conviction by means of a federal habeas petition."); *Davis v. Henderson Cty. Sheriff's Dep't*, 2008 WL 4426581, at *4 (E.D. Tex. Sept. 24, 2008) (finding a plaintiff's claim foreclosed by *Heck* even though the plaintiff was no longer incarcerated and noting that the plaintiff must first overturn or set aside the conviction through, for instance, "executive clemency, as for example by the issuance of a pardon . . . .").

[5] TELEPHONE CALL TO OUACHITA PARISH DISTRICT ATTORNEY, October 3, 2019.

he was placed on pre-trial diversion, because he completed the pre-trial diversion program. *Id.* at 9.

"Entering a pre-trial diversion agreement does not terminate the criminal action in favor of the criminal defendant for purposes of bringing a malicious prosecution claim. By entering these agreements, criminal defendants are effectively foregoing their potential malicious prosecution suit in exchange for conditional dismissal of their criminal charges." *Taylor*, 36 F.3d at 456. "[P]roceedings are terminated in favor of the accused only when their final disposition indicates that the accused is not guilty." *Id.* (adopting the reasoning of *Singleton v. City of New York,* 632 F.2d 185 (2d Cir. 1980)).

In *Morris v. Mekdessie*, 768 F. App'x 299, 301 (5th Cir. 2019), the Fifth Circuit held that an arrestee's malicious prosecution claim was properly dismissed under *Heck* because the arrestee completed a pre-trial diversion program, and entry into the pre-trial diversion agreement did not terminate the criminal action in favor of arrestee. The court reasoned that a "division [sic] program is essentially a middle ground between conviction and exoneration." *Id.* (citing *Gilles v. Davis*, 427 F.3d 197, 211 (3d Cir. 2005) (explaining the procedure as a "compromise" because although there is not a guilty plea, a diversion imposes burdens on the defendants "not consistent with innocence")). "Even though it is not a guilty plea, defendants entering diversion programs 'acknowledge responsibility for their actions.'" *Id.* (quoting *Taylor*, 36 F.3d at 455).

Here, as noted, Plaintiff claims that Walker lacked probable cause to place him in the pre-trial diversion program, and he asks the Court to terminate the pre-trial agreement. Manifestly, prevailing on this quasi-malicious prosecution claim (i.e. a claim that a prosecutor lacked probable cause to force a plaintiff to choose between prosecution and pre-trial diversion) and securing the termination of the pre-trial diversion agreement would necessarily imply the

9

invalidity of the pre-trial diversion agreement. See *Heck*, 512 U.S. at 484 ("One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused."); *Cormier*, 493 F. App'x at 583; *Wells*, 45 F.3d at 95; *Taylor*, 36 F.3d at 456; see also *Buck v. E. Baton Rouge Sheriff's Office*, 2014 WL 2593852, at *3 (M.D. La. June 10, 2014).

Thus, Plaintiff may not pursue the relief he seeks unless the criminal action underlying his pre-trial diversion agreement terminates in his favor. The Court should dismiss this claim.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that the following claims, raised by Plaintiff Joshua Jamichael VanBuren, be **DISMISSED WITH PREJUDICE** as duplicative, frivolous, and malicious: (1) that Officer Jody Ledoux arrested him without probable cause; (2) that District Attorney Nick Anderson filed a bill of information against him without probable cause; and (3) that Assistant District Attorney Daniel Hunter filed a bill of information against him without probable cause.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claim that Officer Paul Blunschi falsely arrested him for attempted second-degree murder be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's right to prosecute his pending, duplicative appeal. The claim should otherwise be **DISMISSED WITH PREJUDICE** as duplicative, frivolous, and malicious.

**IT IS FURTHER RECOMMENDED** that Plaintiff's claim that Assistant District Attorney Doug Walker placed him on pre-trial diversion without probable cause, along with his associated requests for monetary damages, be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state claims on which relief may be granted, and for seeking monetary relief against a defendant immune from such relief.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request to terminate his pre-trial diversion agreement, in connection with his claim that Assistant District Attorney Doug Walker placed him on pre-trial diversion without probable cause, be **DISMISSED WITH PREJUDICE** as frivolous until the *Heck* conditions are met.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 4th day of October, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE